IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MEMBERUP, INC., | § | NO. 1:25-CV-00122-DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| CULTURE ADD COMPANIES, INC., | § | |
| | § | |
| Defendant. | § | |

ORDER ADOPTING REPORT AND RECOMMENDATION, AND GRANTING
MOTION FOR DEFAULT JUDGMENT

Before the Court is a Report and Recommendation filed by U.S. Magistrate Judge Mark Lane. (Dkt. # 10.) On April 25, 2025, the Court referred Plaintiff MemberUp, Inc., ("Plaintiff" or "MemberUp") Motion for Default Judgment (Dkt. # 9) to Magistrate Judge Mark Lane. Magistrate Judge Lane filed his Report and Recommendation (the "Report") on July 21, 2025. Objections to the Report were due within 14 days after being served with a copy.[1] Neither party filed any objections to the Report.

---

[1] Despite failing to enter an appearance in this case, the Court requested that Defendant be served a copy. (See Dkt. # 11.)

BACKGROUND

The Court will recite the facts as stated by the Magistrate Judge. Plaintiff is a Texas corporation that created an online platform for content creators to converse and do business, including selling subscriptions, memberships, courses, and coaching. (Dkt. # 1 at ¶ 1.) Plaintiff partnered with Defendant after Defendant represented that it had a mailing list of 600,000 email addresses it could use to increase engagement with Plaintiff's platform. (Id. at ¶¶ 3, 7.) Defendant was brought on as a member and given a 10% equity stake in the Company based on its representations to Plaintiff.[2] (Id. at ¶ 3.)

Upon joining the Company, Defendant executed an Operating Agreement on October 5, 2022. (Id. at ¶ 2.) The Operating Agreement provided the terms of Defendant's membership in the Company and included provisions regarding the expulsion of a member, voluntary dissociation of a member, payout terms, and attorneys' fees. (Id. at ¶¶ 4-6; Dkt. # 1-1.) For the buyout of an expelled or disassociated member, the Operating Agreement provides, "[o]nce Company valuation is agreed upon and buyout price is confirmed, Managers may elect to pay the value of such Member's interest in several lump-sum payments, or under a promissory note payable at the Prime Rate plus one percent (1%) interest

---

[2] At the time Defendant joined the Company, the Company was a limited-liability company. (Dkt. # 1 at ¶ 2.) It is now, and at the time of filing was, a corporation. (Id.)

for up to ten (10) years." (Dkt. # 1 at 13.) Furthermore, "if not in agreement with the initial valuation, the Expelled Member has the right to obtain a second opinion from another independent appraiser." (Id. at 10.) After Defendant joined the Company, Plaintiff realized that the email list was approximately half the size of what Defendant had claimed, and Defendant did not generate the anticipated traffic or sales. (Id. at ¶¶ 7, 8.) One year after Defendant joined the Company, Plaintiff's management team called Defendant's founder, Danielle Leslie, to suggest that Defendant's equity in the Company should be decreased to 1% to reflect Defendant's value to the Company. (Id. at ¶ 9.) Leslie stated she would think about it and two months later, emailed Plaintiff's CEO, Amy Sangster, stating that a reduction to 2% equity "feels really good." (Id. at ¶ 10.)

In February 2024, Leslie told Sangster that Defendant wished to exit the Company, and the parties spent the next several months disputing the terms of Defendant's payout. (Id. at ¶¶ 12–14.) Defendant threatened to disparage the Company if Plaintiff did not agree to Defendant's separation terms. (Id. at ¶ 14.) Plaintiff offered to pay Defendant 2% of a previous valuation of the Company—$2 million. (Id. at ¶ 15.) Plaintiff suggested arbitrating or mediating the dispute, which Defendant was not amenable to on account of not being "interested in paying for arbitration." (Id. at ¶ 16.) Defendant claimed there was no dispute and that Defendant was waiting for a separation agreement at 10% equity. (Id.)

3

Plaintiff received a new third-party valuation of the Company for $781,250.40 and offered to pay Defendant 10% at the new valuation over ten years. (Id. at ¶ 18.) The parties sent successive counter-offers until August 2024 when Plaintiff's members voted to expel Defendant from the Company. (Id. at ¶ 21.)

In October 2024, Plaintiff offered three options to Defendant: "(1) Execute the separation agreement and receive 10% of the $781,250.40 valuation payable over ten years, (2) arbitrate the dispute in Texas as required under the Operating Agreement, or (3) litigate the dispute." (Id. at ¶ 22.) Defendant provided two counter-offers: "(1) 10% of $2 million paid over three years, or (2) $130,000 paid over one year." (Id. at ¶ 23.) Defendant never requested a second, or sought its own, third-party valuation of the Company. (Id. at ¶ 24.)

Plaintiff seeks a declaratory judgment from the court declaring the following:

(1) That Defendant was properly expelled as a member of Plaintiff in August 2024, or in the alternative, that Defendant voluntarily disassociated itself from Plaintiff in July 2024;

(2) That Defendant is owed a payout equal to 10% of the third-party valuation obtained by Plaintiff valuing Plaintiff at $781,250.40;

4

  (3) That the payout to Defendant is payable under a promissory note at the Prime Rate plus one percent (1%) interest over a period of ten years pursuant to Section 5.07 of the Operating Agreement;

  (4) That Defendant is liable to Plaintiff for its reasonable and necessary attorney fees in an amount to be proven to the Court;

  (5) That Defendant is liable for all costs of court allowed by law; and

  (6) That Plaintiff is entitled to all such other and further relief as this Court deems to be just, proper, and equitable.

(Id. at 8–9.)  Service was executed upon Defendant's registered agent on February 19, 2025.  (Dkts. ## 5, 9 at ¶ 12.)  Defendant did not answer or otherwise appear in this case.  At Plaintiff's request, the Clerk's Office entered default against Defendant.  (Dkt. # 8.)  Plaintiff now moves for entry of default judgment against Defendant.  (Dkt. # 9.)  Plaintiff seeks the declaratory judgment described above and provides $5,894.80 as the figure for its necessary attorneys' fees.  (Id. at 5–6.)  Plaintiff further seeks costs and post-judgment interest.  (Id. at 6.)

   On July 21, 2025, Magistrate Mark Lane entered his Report on the motion for default judgment, recommending that the Court grant Plaintiff's motion.  (Dkt. # 10.)  No objections were filed.

ANALYSIS

Where, as here, neither party objects to the Magistrate Judge's findings, the Court reviews the Report and Recommendation for clear error. United States v. Wilson, 864 F.2d 1219, 1221 (5th Cir. 1989).

After careful consideration, the Court adopts the Magistrate Judge's Report and Recommendation.  The Court finds that the Magistrate Judge's conclusion is correct that Defendant has not entered an appearance in this case or otherwise responded, and that after considering the relevant factors, "Default judgment is procedurally warranted . . . ."  (Dkt. # 10 at 6.)  Additionally, the Magistrate Judge's conclusion is correct that "default judgment is substantively warranted because Plaintiff has stated a viable claim against Defendant" given the finding of an existing justiciable controversy and the Magistrate Judge's decision that the Court has authority and discretion to grant declaratory relief.  (Id. at 6–9.)  The Court further agrees with, and therefore declares, the Magistrate Judge's findings that: (1) the Defendant was properly expelled from the Company in August 2024; (2) the Plaintiff's valuation of the payout amount is reasonable and that Defendant is owed 10% of $781,250.40; and (3) that payout is payable under a promissory note at the Prime Rate plus 1% over a period of ten years.  (Id. at 9–11.)  Lastly, the Court agrees with the Magistrate Judge's conclusion that "the

underlying Operating Agreement and Texas contract law provide a sufficient basis to allow recovery of attorneys' fees" and that the claimed amount of $5,894.80 is reasonable. (<u>Id.</u> at 11.)

## CONCLUSION

Accordingly, for the reasons given, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation (Dkt. # 10) as the opinion of the Court, and **GRANTS** Plaintiff's Motion for Default Judgment (Dkt. # 9), finding that: (1) Defendant was properly expelled as a member of Plaintiff in August 2024; (2) Defendant is owed a payout equal to 10% of the third-party valuation obtained by Plaintiff valuing the company at $781,250.40; (3) Payout to Defendant is payable under a promissory note at the Prime Rate plus one percent (1%) over a period of ten years; and (4) Defendant is liable to Plaintiff for its reasonable and necessary attorney fees and costs in the amount of $5,894.80. The Clerk's Office is **INSTRUCTED** to **ENTER JUDGMENT** and **CLOSE THE CASE**.

**IT IS SO ORDERED**.

DATED: Austin, Texas, August 20, 2025.

_____
David Alan Ezra
Senior United States District Judge